UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAURIE L. KAYS,<br><br>    Plaintiff,<br><br> v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | CASE NO. C05-5133FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for January 6, 2006 |

  Plaintiff, Laurie L. Kays, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

  Plaintiff currently is thirty-one years old.[1] Tr. 27. She has a high school education and past work

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

experience as a data entry worker, a bank proof operator and an account clerk. Tr. 19, 72, 77, 103.

Plaintiff protectively filed her applications for disability insurance and SSI benefits on April 30, 2002, alleging disability as of December 15, 2001, due to anxiety, a panic disorder and depression. Tr. 18, 27, 55, 71, 237. Both applications were denied initially and on reconsideration. Tr. 27-29, 35, 240-41. Plaintiff requested a hearing, which was held before an administrative law judge ("ALJ") on August 7, 2003. Tr. 249. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 249-308.

On December 23, 2003, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since December 15, 2001;

(2) at step two, plaintiff had "severe" impairments consisting of a panic disorder and depression;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a full range of medium work, with certain non-exertional limitations, which precluded her from performing her past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 25-26. Plaintiff's request for review was denied by the Appeals Council on December 23, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 7; 20 C.F.R. §§ 404.981, 416.1481.

On February 23, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision.[2] (Dkt. #1). Specifically, plaintiff argues that the ALJ's decision finding her disabled should be reversed and remanded for an award of benefits because the ALJ: (1) erred in finding her impairments did not meet or equal the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and (2) erred in

---

[2]As indicated, plaintiff's complaint was filed more than sixty days after the Commissioner issued her final decision. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 404.982, 416.1481, 416.1482. This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will deal with this matter on its merits.

REPORT AND RECOMMENDATION
Page - 2

discounting her credibility. While the undersigned agrees the ALJ erred in finding plaintiff not disabled, for the reasons set forth below, this matter should be remanded to the Commissioner for further administrative proceedings.

DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ Conducted an Improper Step Three Analysis

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R §§ 404.1520(d), 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id. An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2. It equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed

impairment." Id. at *2.  However, "symptoms alone" will not justify a finding of equivalence. Id.

    A.    <u>Insufficient Analysis of the Medical Evidence in the Record</u>

In this case, at step three of the disability evaluation process, the ALJ found as follows:

> I have considered all relevant and available clinical signs and laboratory findings, the effects of symptoms, and how a claimant may be affected by factors, including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.
>
> The undersigned finds that the claimant's mental impairments mild to moderately restrict activities of daily living and limit her in maintaining social functioning, and cause moderate deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  There have been no episodes of deterioration or decompensation in work or work-like setting causing withdrawal from that situation or exacerbation of symptoms.
>
> The evidence supports a finding that the claimant has panic disorder and depression, impairments which cause significant vocationally relevant limitations.  The claimant has no impairment which meets the criteria of any of the listed impairments in Appendix 1 of the Regulations (20 C.F.R. Part 404, Subpart P, Appendix 1).  No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.

Tr. 21-22.  Plaintiff argues that the above findings are insufficient, because the ALJ failed to provide any analysis of the medical evidence in the record to support his conclusion that she had no impairment which met or equaled any of those in the Listings.  The undersigned agrees.

The ALJ gave a detailed summary of the medical evidence in the record and made general findings regarding plaintiff's mental functional capabilities. Tr. 20-22.  The ALJ, however, provided no analysis of any of the medical evidence in the record, even though an ALJ "must evaluate the relevant evidence <u>before</u> concluding that a claimant's impairments do not meet or equal a listed impairment." <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001) (emphasis added).  In other words, a mere "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." <u>Id.</u>  Accordingly, while it may be true, as discussed below, that there is substantial evidence in the record to support the ALJ's decision, the undersigned is unable to discern how the ALJ arrived at his step three determination.  Thus, on this basis alone, remand for further administrative proceedings is appropriate.

    B.    <u>Listing 12.06</u>

Plaintiff argues further, however, that reversal and remand for an outright award of benefits is more proper in this case.  Specifically, plaintiff asserts the evidence in the record shows her mental impairments meet the criteria for Listing 12.06 (anxiety related disorders).  The undersigned disagrees.  The criteria for

Listing 12.06 are as follows:

    12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

    The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

    A. Medically documented findings of at least one of the following:

        1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

            a. Motor tension; or
            b. Autonomic hyperactivity; or
            c. Apprehensive expectation; or
            d. Vigilance and scanning;

  Or

        2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

        3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

        4. Recurrent obsessions or compulsions which are a source of marked distress; or

        5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

    B. Resulting in at least two of the following:

        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

Or

    C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

        1.    <u>The "A" Criteria</u>

First, plaintiff argues her mental impairments meet the requirements of A.2 and A.3. That is, she

REPORT AND RECOMMENDATION
Page - 5

asserts she has "[a] persistent irrational fear of a specific object, activity, or situation" and/or "[r]ecurrent severe panic attacks." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06A.2-A.3. As support for this argument, plaintiff states, for example, that she consistently has described having the symptoms set forth in A.3. See Plaintiff's Opening Brief, pp. 12-13. As discussed below, however, the ALJ properly discredited plaintiff's testimony regarding her symptoms. In addition, as Listing 12.06 clearly states, the symptoms described in A.2 and A.3 must be based on "[m]edically documented findings."

Next, plaintiff argues the court should find that Listing 12.06A.3 is met based on the description of the term "panic disorder" set forth in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). Plaintiff's Reply Brief, p. 3. Plaintiff asserts that because the criteria in Listing 12.06A correspond to the symptoms described in the DSM, then, "[b]y definition, if a claimant has a diagnosis described in the DSM, the claimant meets the 'A' criteria" set forth in Listing 12.06. Id. She further asserts that because the ALJ found she had a panic disorder which caused "significant vocationally relevant limitations" (Tr. 22), and because the DSM describes the term "panic disorder" as being the same as or analogous to an anxiety disorder, her panic disorder meets the "A" criteria of Listing 12.06. Id. The undersigned, however, does not find this reasoning persuasive.

Even though the criteria set forth in the Listings may be based on the descriptions contained in the DSM, it is the Listings, and not the DSM, that the ALJ, and the court for that matter, must follow. Indeed, if the Commissioner really intended for the descriptions contained in the DSM to govern the determination as to whether a claimant's impairments meet the Listings, there would be no need for the ALJ or the court to look at the Listing criteria, but instead they would go straight to the DSM. The undersigned, however, does not believe this is what the Commissioner intended. For example, there is no reference to the DSM at all in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00. It certainly may be true that the Commissioner modeled the Listing criteria on the terminology used in the DSM. See 50 Fed. Reg. 35,038; 56 Fed. Reg. 33,130. It is clear though, that although the Listing criteria are "based on" DSM terminology, they in fact are "not always" identical to that terminology. 56 Fed. Reg. 33,130.[3]

---

[3] The Commissioner thus noted expressly that: "As indicated in the 'Cautionary Statement' on page xxix of the DSM-III-R, 'It is to be understood that inclusion here, for clinical and research purposes, of a diagnostic category * * * does not imply that the condition meets legal or other nonmedical criteria for what constitutes mental disease, mental disorder, or mental disability. The clinical and scientific considerations involved in categorization of these conditions as mental disorders may not be wholly relevant to legal judgments, for example, that take into account such issues as individual responsibility, disability

REPORT AND RECOMMENDATION
Page - 6

In addition, while the record indicates that plaintiff has significant symptoms of anxiety primarily related to work and being out in public (Tr. 141, 144-46, 155, 168), the undersigned cannot say the medical evidence in the record as a whole definitively shows that she has "[a] persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06A.2.  That is a determination for the ALJ to make based on a proper analysis of the relevant medical evidence in the record.  Similarly, the record before the court does not clearly show that plaintiff suffers from "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06A.3.

It is true plaintiff reported that panic attacks had occurred "several times during the week" in mid-June 2001, and that she had experienced "about six panic attacks in the past two months" later that month. Tr. 146, 155.  The medical evidence in the record, however, indicates that medication was helping her with those symptoms.  For example, while plaintiff complained of dizziness during "stressful situations," she reported improvement in that area on medication in early May 2001. Tr. 143.  In mid-June 2001, plaintiff reported that her medication had been "helpful to her" during the past year. Tr. 145.  It was further noted that her symptoms "were well controlled" on the medication, "but returned when it was discontinued." Tr. 142-43.  Overall, plaintiff continued to improve and do "much better" on her medication through late July 2001. Tr. 139-42.  At that time, her panic appeared to be "stabilized." Tr. 139.

Plaintiff was seen by Dr. Patricia Gardner from early June 2002 through mid-June 2003.  All of her mental status examinations during that time were fairly unremarkable. Tr. 162, 168, 172, 226-27, 234-36. In mid-June 2002, plaintiff again reported that her medication was helping her. Tr. 170.  In early July 2002, she told Dr. Gardner that she had "not had a panic attack since adding" clonazepam. Tr. 168.  She reported in late October 2002, that she felt she was "doing okay," and that "overall" she was "functioning pretty well." Tr. 236.  Dr. Gardner also noted that plaintiff was "doing better than she had been before." Id.  In early December 2002, plaintiff reported having only "low level anxiety." Tr. 235.  In early April 2003, she continued to report feeling better on her medication, stating specifically that she felt she was "getting more skills in coping with anxiety" when it occurred. Tr. 227.

---

determination, and competency.'" Id.
REPORT AND RECOMMENDATION
Page - 7

2. <u>The "B" Criteria</u>

Plaintiff argues that because she has "[m]arked difficulties in maintaining social functioning" and "[r]epeated episodes of decompensation, each of extended duration," her mental impairments meet the "B" criteria of Listing 12.06 as well. <u>See</u> 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.06B.2 and § 12.06B.3. First, with respect to the issue of her social functioning, plaintiff appears to assert that "[t]he evidence of recurring panic attacks outside the home is consistent throughout the record," thereby showing that she has at least "marked" limitations in this area. Plaintiff's Opening Brief, p. 14. As discussed above, however, the evidence in the record does not clearly show that she consistently suffered from such attacks, but rather it indicates she experienced improvement in that area over time. Further, evidence in the record regarding plaintiff's ability to function socially is mixed at best.

For example, in mid-June 2001, plaintiff reported that she had "several friends." Tr. 145. In early June 2002, she stated, however, that she was "unable to do any shopping or go out in public without people with her." Tr. 171. Later that month, plaintiff reported that she did "not leave the house by herself," and was "afraid to go anywhere even with someone if it is far from home in case a panic attack occurs." Tr. 155. She also reported that she did not go shopping alone, drove only if there was an adult passenger in the car, stayed at home and did not socialize, and had only one friend who she talked to "once in awhile but does not see." Tr. 157. On the other hand, plaintiff reported in late October 2002, that she missed "a few" of her classes because of anxiety, "overall" she was "functioning pretty well." Tr. 236. Similarly, in early February 2003, while she reported having skipped "class a few times for vague fears that something might happen if she went," she did stay in school and continued "to get good grades." Tr. 234. Indeed, in early April 2003, she reported being "able to get all A's" during the last school quarter. Tr. 227.

Jamie E. Carter, Ph.D., who examined plaintiff in late June 2002, found her "social interaction" to be "very impaired due to her fear of panic attacks." Tr. 158. Nevertheless, neither plaintiff's treatment providers nor Dr. Gardner, her treating psychiatrist, found her to be that limited in her social functioning. While Carla van Dam, Ph.D., and Anita Peterson, Ph.D., two of the non-examining consulting physicians in the record, indicated that plaintiff was markedly limited in her ability to interact appropriately with the general public, they also noted that she got along with others, that she had friends, and that she was able to go out in public, though she did not like to do so. Tr. 184, 186, 197. It also appears that plaintiff was well-

liked and did "go out socially." Tr. 186.  The medical expert, Dr. Larry Hart, furthermore, felt she was only mildly to moderately limited in her social functioning, stating that her symptoms were "really dissimilar to that of a severely disabling panic attack-type syndrome." Tr. 282.

Plaintiff also argues the ALJ improperly relied on the global assessment of functioning ("GAF") scores contained in the record in finding her only mildly to moderately limited in her social functioning. Tr. 22; Plaintiff's Opening Brief, p. 13.  It is true that the ALJ referenced plaintiff's assessed GAF scores in his summary of the medical evidence in the record regarding her mental impairments. Tr. 20-21.  There is no indication in the ALJ's decision, however, that he actually relied on such scores for this purpose, or, even if he did so, that he relied on them exclusively.  In addition, plaintiff's implied assertion that the lower GAF score assessed by Dr. Carter more appropriately captures her overall functioning level, rather than the score assessed by Dr. Gardner, is not persuasive.

In early June 2002, Dr. Gardner assessed plaintiff with a GAF score of 57. Tr. 172.  In late June 2002, Dr. Carter assessed her with a GAF score of 45. Tr. 157.  As noted by plaintiff, these assessments were provided only two weeks apart.  As such, to the extent that the ALJ did rely on the GAF scores in the record, he was free to choose that of Dr. Gardner over that of Dr. Carter. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where opinion of examining physician is based on independent clinical findings, it is within ALJ's discretion to disregard conflicting opinion in another examining physician's diagnosis).  This is even more true in this case, as Dr. Gardner was plaintiff's treating psychiatrist.  Such reliance would appear to be further appropriate, in light of the fact that plaintiff underwent a mental health evaluation in mid-June 2001, during which she was assessed with a current GAF score of 58 and a "[l]ong term" GAF score of 62. Tr. 146.  In addition, plaintiff admits that Dr. Carter's GAF assessment was based on her self-reports. Plaintiff's Opening Brief, p. 13. As discussed below, however, the ALJ did not err in discounting plaintiff's credibility regarding her symptom testimony.

Plaintiff's argument that she has had repeated episodes of decompensation of extended duration is equally suspect.  No medical source in the record has opined that plaintiff has experienced more than one or two such episodes. See Tr. 197.  Plaintiff argues, however, that such episodes can be inferred from the medical evidence in the record showing significant alteration in medication, documentation of the need for a more structured psychological support system, and other relevant information. Plaintiff's Opening Brief, p.

REPORT AND RECOMMENDATION
Page - 9

14 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C4). While this may be true in general, again, the evidence in the record does not definitively show that such an inference is appropriate here.[4] For example, although plaintiff may have received increases in her medication, as discussed above, the record shows that she has seen improvement as a result of such medication. Further, there is no indication in the record that her parents' household constituted "a highly structured and directing household."[5] Id.

        3.     The "C" Criteria

Plaintiff argues the ALJ further erred in failing to evaluate her mental impairments under the "C" criteria of Listing 12.06. It is true that neither the ALJ nor the medical expert who testified at the hearing specifically addressed the issue of the "C" criteria. To the extent their failure to do so constituted error, however, the undersigned finds such error to be harmless. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error). There is no indication in the record that plaintiff suffers from a "complete inability to function independently outside the area of" her home. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06C. Indeed, the only medical opinion in the record on this issue found the "C" criteria were not met in this case. See Tr. 198.

    C.     Plaintiff's Other Arguments

Plaintiff takes issue with the ALJ's failure to find she had a panic disorder "with agoraphobia." Tr. 22, 25. She asserts this failure significantly understated the severity of her mental functioning. Plaintiff's Reply Brief, p. 4. While it seems that the substantial evidence in the record supports a later diagnosis of panic disorder with agoraphobia (Tr. 139-43, 146, 157, 162, 168, 172, 226-27, 234-36), it is not clear, and plaintiff does not explain, how the ALJ's failure to include the full diagnosis in his decision undermines the

---

[4] Plaintiff also contends such evidence supports a finding of "severe" limitations of social functioning that meet the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.08B4. Id. Listing 12.08 concerns personality disorders. None of the medical sources in the record, however, have diagnosed plaintiff with a personality disorder. Accordingly, application of the criteria of Listing 12.08 is inappropriate in this case.

[5] Plaintiff points to the testimony of Dr. Hart as support for her argument here. She asserts that Dr. Hart "criticized and discounted" her "move to the structured and directing environment of her parents' home as an action inconsistent with proper therapy." Id. at n.13. However, it does not appear that Dr. Hart criticized plaintiff's move to her parents' house *per se*, or that he labeled it as a "structured and directing environment." Dr. Hart did testify that plaintiff and her family seemed to be "reinforcing the panic attacks" by having her father drive her around and by her own voluntary actions in leaving stressful situations "contrary to therapeutic expectations." Tr. 283. Such testimony though, hardly supports plaintiff's claims with respect to this issue.

REPORT AND RECOMMENDATION
Page - 10

1 ALJ's other findings.  Indeed, although panic disorder and panic disorder without agoraphobia may not be
2 the same disorder, it is quite clear that the medical evidence in the record the ALJ considered (although
3 failed to properly analyze) focused on the agoraphobic aspects of plaintiff's panic disorder.  Accordingly, to
4 the extent that the ALJ's failure to include the full diagnosis of plaintiff's panic disorder in his decision, the
5 undersigned again finds such error to be harmless.

6 Plaintiff next argues the ALJ erred by substituting his subjective opinion of her symptoms for that of
7 the objective medical evidence in the record at steps two and three of the disability evaluation process.
8 There is no indication in the ALJ's opinion, however, that the ALJ actually did so.  Indeed, the ALJ found
9 plaintiff's mental impairments to be severe at step two (a finding the undersigned assumes plaintiff is not
10 now challenging), and the only reason the issue of plaintiff's credibility has come up in the context of the
11 ALJ's step three analysis, is because plaintiff herself has asserted that she should be found to meet the "A"
12 criteria of Listing 12.06 based on her own description of her symptoms. See Plaintiff's Opening Brief, p. 13.
13 Accordingly, plaintiff's argument here is without merit.

14 Finally, plaintiff argues the ALJ erred in failing to evaluate whether or not her mental impairments
15 equaled any of those found in the Listings.  The undersigned agrees.  An impairment will equal a listed
16 impairment "if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least
17 equivalent in severity to the set of medical findings for the listed impairment." SSR 83-19, 1983 WL 31248
18 *2.  As discussed above, the ALJ erred in finding plaintiff did not meet the criteria of Listing 12.06, because
19 he failed to conduct a proper analysis of the medical evidence in the record.  For the same reason, the
20 undersigned also is unable to determine whether or not the ALJ's determination that none of plaintiff's
21 mental impairments equaled any of those in the Listings was proper.  Thus, on remand, the Commissioner
22 shall re-consider the issue of medical equivalence as well.

23 II.    The ALJ Did Not Err in Discounting Plaintiff's Credibility

24 Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d
25 639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination. Allen, 749
26 F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is
27 based on contradictory or ambiguous evidence. Id. at 579.  That some of the reasons for discrediting a
28 claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

Here, the ALJ found plaintiff to be not fully credible. Tr. 22-23.  Plaintiff challenges at the outset the ALJ's authority to even conduct a credibility assessment.  Specifically, plaintiff asserts that "it is legal error for the ALJ to proceed to a credibility assessment where [the] claimant's symptoms are those that can be reasonably expected to produce the claimant's symptoms as shown by medically acceptable clinical and laboratory diagnostic techniques unless there is a question of intensity or persistency." Plaintiff's Reply Brief, p. 9 (relying on Social Security Ruling ("SSR") 96-7p).  Plaintiff, however, misconstrues the nature of the credibility determination.  For example, SSR 96-7p states in relevant part as follows:

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, <u>the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects</u>.

1996 WL 374186 *1 (emphasis added).  In other words, the only way to establish the intensity, persistence or functionally limiting effects of a claimant's symptoms is by making a determination as to the claimant's credibility.  This is what the ALJ did here.

With respect to the specific credibility determination in this case, the ALJ stated that while plaintiff

REPORT AND RECOMMENDATION
Page - 12

had alleged disabling depression and panic attacks, she had not been hospitalized and medical treatment of her mental problems appeared to have lessened her symptoms when she used her medication and attended therapy sessions. Tr. 23.  Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ also may discount a claimant's credibility on the basis of medical improvement. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

Here, as discussed above, there is ample evidence in the record that plaintiff's anxiety symptoms and panic disorder improved on medication.  In addition, the record fails to indicate that, other than her medications and bimonthly mental health counseling, plaintiff ever required more aggressive treatment, such as hospitalization.  Indeed, plaintiff even discontinued her mental health counseling in mid-June 2003. Tr. 226.  While plaintiff reported she discontinued her counseling because she felt she was not getting much out of it with her new therapist, there is no indication in the record that she continued her therapy with anyone else, despite being recommended to do so. Id.

The ALJ next discounted plaintiff's credibility in part because she was able to continue attending college classes, and indeed get A's while doing so, despite her allegations of disabling anxiety symptoms and panic attacks. Tr. 23.  Indeed, as noted above, plaintiff reported being able to function "pretty well," and only missed "a few of her classes because of anxiety." Tr. 236.  Thus, plaintiff's ability to attend and succeed in a classroom setting tend to belie her allegations of inability to work.  As such, the undersigned does not find the ALJ erred in discounting plaintiff's credibility in part for this reason.

The ALJ next discounted plaintiff's credibility for the following reason:

> The claimant alleges that she has disabilities which prevent her from holding a job, but the evidence shows that the claimant's daily activities which demonstrate successful independent living which is inconsistent with the claims of disabling impairments.  The claimant told Dr. Carter on June 26, 2002, that she does cooking for herself and 2 children, cleans the kitchen and her bedroom, does laundry, goes shopping with a parent and she drives a car with an adult passenger, and she has a friend whom she trusts and talks to. (Exhibit 4F, p. 20)  This level of activity demonstrates a level of vigor and an ability to concentrate and interact with others which is inconsistent with the claimant's claim that she is unable to perform any work.

Tr. 23.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a

1  substantial part of his or her day performing household chores or other activities that are transferable to a
2  work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability
3  benefits, and "many home activities may not be easily transferable to a work environment." Id.

4  Plaintiff argues that the activities cited by the ALJ are only "isolated incidents." Plaintiff's Opening
5  Brief, p. 19.  The activities of daily living noted by Dr. Carter and others (see Tr. 156-57, 185), however,
6  appear to be far greater than mere isolated incidents.  No medical source in the record, furthermore, has
7  found plaintiff to be more than mildly to moderately limited in this area.  See Tr. 197, 281-82.  While it is
8  true there is evidence in the record that plaintiff has significant issues with social functioning, there is other
9  evidence in the record, as discussed above, that those issues are not as severe as plaintiff has alleged.  In
10  such cases, the court should not "second guess" the ALJ's credibility determination.  Sample, 694 F.2d at
11  642;  Allen, 749 F.2d at 579-80 (court may not reverse credibility determination where that determination is
12  based on contradictory or ambiguous evidence).

13  The ALJ also discounted plaintiff's credibility because the medical evidence in the record weighed
14  against her allegations of disability. Tr. 23.  Specifically, the ALJ stated that "[n]one of the physicians and
15  psychologists involved in" plaintiff's treatment provided objective findings indicating she was disabled. Tr.
16  22.  A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the
17  clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir.
18  1998).  While, as discussed above, it appears that there may be substantial evidence to support the ALJ's
19  determination of non-disability, because the ALJ failed to provide any analysis of the medical evidence in
20  the record (other than general boilerplate conclusions), the undersigned again is unable to determine if that
21  evidence constitutes a valid reason for discounting plaintiff's credibility.  Nevertheless, the fact that one of
22  the reasons for discounting plaintiff's credibility may be improper, does not render the ALJ's credibility
23  determination invalid, as long as that determination is supported by substantial evidence in the record, as it
24  is in this case. Tonapetyan, 242 F.3d at 1148.

25  III.   This Case Should Be Remanded for Further Administrative Proceedings

26  The court may remand a case "either for additional evidence and findings or to award benefits."
27  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Benefits may be awarded where "the record has
28  been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues remain with respect to the ALJ's analysis of the medical evidence in the record and whether or not plaintiff's impairments meet or equal the criteria of any of the Listings, this matter should be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 6, 2006**, as noted in the caption.

DATED this 12th day of December, 2005.

Karen L. Strombom
United States Magistrate Judge